**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DR. CHRISTOPHER MEEHL and VETKLICKS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY J. MCDERMOTT, <br><br> Defendant. | ) ) ) ) ) ) ) ) CIVIL ACTION NO: _____ ) ) ) ) |

## VERIFIED COMPLAINT

Plaintiffs, Dr. Christopher Meehl and VetKlicks, LLC, by their attorneys Harris Beach PLLC and Lurie, Lent & Friedman, LLP, for the Complaint in this action allege as follows:

## NATURE OF ACTION

1.  This is an action by plaintiffs VetKlicks, LLC ("VetKlicks") and Dr. Christopher Meehl, D.V.M. ("Meehl") (collectively, "Plaintiffs") against Anthony J. McDermott ("Defendant" or "McDermott"), to enforce the terms of a certain Asset Purchase Agreement ("APA", attached hereto as **Exhibit A**) that Dr. Meehl, on behalf of VetKlicks, LLC, a to-be-formed limited liability company, and McDermott executed on September 16, 2013. Under the terms of the APA, Plaintiffs purchased and subsequently paid in full for, among other things, ownership of the domain name AnimalHospitals.com and all associated content, design, and code (source and object). Contrary to the terms of the APA, McDermott has generally breached the APA, for reasons including, but not limited to, failing to produce certain software to Plaintiffs. In addition, Plaintiffs seek a declaration of the parties' rights and obligations under the Agreements.

**PARTIES**

2. VetKlicks was formed on September 18, 2013 and is a Delaware limited liability company authorized to do business in Massachusetts with its principal place of business in the County of Essex, within the Commonwealth of Massachusetts.

3. Meehl is the sole member of VetKlicks and a resident of the Town of North Andover, County of Middlesex, within the Commonwealth of Massachusetts.

4. Upon information and belief, McDermott has been and continues to be a citizen of Fort Lauderdale, Florida.

5. The Plaintiffs' causes of action arise from Defendant's (1) transacting business in the Commonwealth of Massachusetts, (2) contracting to supply goods in the Commonwealth of Massachusetts, and/or (3) causing tortious injury in the Commonwealth of Massachusetts, and the Defendant (4) does or is soliciting business, or engaged in a persistent course of conduct, or derives substantial revenue from the sales of goods and services within the Commonwealth of Massachusetts.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. There is complete diversity of citizenship between Plaintiffs and McDermott.

7. Pursuant to section 9.11 of the APA, the parties irrevocably consented to the exclusive jurisdiction in this Court and agreed that venue in this judicial district is proper and required.

8. The request by Plaintiffs for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202. There currently exists real, substantial, and justiciable controversy

between the parties. Plaintiffs seek a determination concerning the validity and enforceability of the APA and related documents between Plaintiffs and Defendant.  Actual controversies exist between the parties requiring a declaratory judgment to set forth their legal rights, duties, and relationships with respect to the APA and related documents as described below.

## FACTUAL BACKGROUND

9. On September 16, 2013, Meehl and McDermott entered into the APA.  Pursuant to the APA, McDermott was to "sell, assign, transfer, convey and deliver" to Meehl, on behalf of VetKlicks, and Meehl, on behalf of VetKlicks, was to purchase from McDermott all of McDermott's "right, title and interest in the Purchased Assets," which included ownership of the domain name AnimalHospitals.com. (Ex. A, § 1.01).

10. The Purchased Assets are defined in Exhibit 1 to the APA as follows:

   a. The domain name "AnimalHospitals.com" and all associated content, design, code (source and object), brands, trademarks and other intellectual and tangible property.

   b. Copies of all current and expired/cancelled contracts related to AnimalHospitals.com and Veterinarians.com.

   c. Any and all consumer data request databases related to AnimalHospitals.com and Veterinarians.com.

   d. Any and all veterinarian or other provider data request databases related to AnimalHospitals.com and Veterinarians.com.

   e. Any and all data collected in relation to AnimalHospitals.com and Veterinarians.com.

3

      f.    All tangible and intangible personal property related to the Nortel PBX phone system in use in connection with AnimalHospital.com [sic].

      g.    All other assets, whether tangible or intangible, related to, in use or useful in connection with AnimalHospitals.com and the other assets set forth herein.

11. AnimalsHospitals.com is a website providing, among other things, internet listings of veterinarians and search options by state, city or zip code.

12. The complete text of Section 1.03 of the APA reads as follows:

> **Section 1.03 Purchase Price.** The aggregate purchase price for the Purchased Assets shall be Two Hundred Fifty Thousand Dollars ($250,000) (the "**Purchase Price**"). The Purchase Price shall be payable via the transfer by Buyer of One Hundred Fifty Thousand Dollars ($150,000) to Seller at the Closing (as defined herein) in cash, by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth on Schedule A attached hereto (the "**Cash Portion**"), and the delivery by Buyer to Seller at Closing of a non-interest bearing promissory note in with an initial principal amount equal to One Hundred Thousand Dollars (the "**Note**"), in the from attached hereto as Exhibit 2.

13. The closing deliverables are stated in the APA as follows:

> **Section 2.03. Closing Deliverables; Transfer of Domain Name.**
>
> (a) At the Closing, Seller shall deliver to Buyer the following:
>
>     (i) Control of the Domain Name as set forth in Section 2.02 above;
>
>     (ii) a transition services agreement in the form attached hereto as Exhibit 3 (the "**Transition Services Agreement**") duly executed by Seller;
>
>     (iii) a license agreement in the form attached hereto as Exhibit 4 (the "**License Agreement**") duly executed by Seller;
>
>     (iv) copies of all consents, approvals, waivers and authorizations required to be delivered by Seller hereunder;

        (v)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement.

    (b)    At the Closing, Buyer shall deliver to Seller the following:

        (i)    a copy of the certificate of organization of Buyer as filed with the secretary of state of the State of Delaware;

        (ii)    the Cash Portion;

        (iii)    the Note;

        (iv)    the Transition Services Agreement and the License Agreement duly executed by Buyer; and

        (v)    a certificate of the Secretary or Assistant Secretary (or equivalent officer) of Buyer certifying as to (A) the resolutions of the member of Buyer, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby, and (B) the names and signatures of the officers of Buyer authorized to sign this Agreement and the documents to be delivered hereunder.

14.    The transaction closed on September 23, 2013 and Meehl delivered the $150,000.00 cash portion of the purchase price by treasurer's check, a copy of which is attached hereto as **Exhibit B**, and executed a promissory note ("Note") in the principal sum of $100,000.00 to be paid monthly in 2014, a copy of which is attached hereto as **Exhibit C**.

15.    Section 5.06 of the APA sets forth the non-competition and non-solicitation clauses of the APA, including but not limited to subpart (a), which reads as follows:

> For a period of ten (10) years commencing on the Closing Date (the "**Restricted Period**"), Seller shall not, and shall not permit any of his Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in the Restricted Business in the Territory; (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant; or (iii) intentionally interfere in any material respect with the business relationships (whether formed prior to or after the date of this Agreement) between the Buyer and its Affiliates and customers or suppliers of the Buyer or its Affiliates .
> . . .

16. Section 5.06(d) of the APA states Plaintiffs' remedy if McDermott breaches or threatens to breach Section 5.06 as follows:

> Seller acknowledges that a breach or threatened breach of this **Section 5.06** would give rise to irreparable harm to Buyer, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Seller of any such obligations, Buyer shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

17. Pursuant to the terms of the APA, McDermott could not have terminated the APA prior to closing, nor may he terminate the APA after closing. Section 8.01 of the APA states:

**Section 8.01  Termination.**  This Agreement may be terminated at any time prior to the Closing:

(a)  by the mutual written consent of Seller and Buyer;

(b)  by Buyer by written notice to Seller if:

  (i)  Buyer is not then in material breach of any provision of this Agreement and there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Seller pursuant to this Agreement and such breach, inaccuracy or failure has not been cured by Seller within five days of Seller's receipt of written notice of such breach from Buyer; or

  (ii)  any of the conditions set forth in **Section 6.01** shall not have been, or if it becomes apparent that any of such conditions will not be within five (5) business days of the Effective Date, unless such failure shall be due to the failure of Buyer to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by it prior to the Closing; or

  (iii)  Buyer is not satisfied with the results of Buyer's due diligence investigations related to the Purchased Assets at any time.

6

18.     The Parties also entered into a Transition Services Agreement on September 23, 2013 in additional consideration for the payment of the $250,000 purchase price. A copy of the Transition Services Agreement is attached hereto as **Exhibit D**. Pursuant to the Transition Services Agreement, McDermott and his team were to provide eight (8) weeks of sales staffing services following the closing date, as set forth in Exhibit A of the Transition Services Agreement. This eight week period has not yet expired.

19.     Section 3.02 of the Transition Services Agreement provides a termination process in the event of Plaintiffs' failure to perform its material obligations under the Transition Services Agreement or the APA. Section 3.02 reads as follows:

20.     **Section 3.02   Breach.** Seller may terminate this Agreement with respect to any Service, in whole but not in part, at any time upon prior written notice to Buyer if Buyer has failed (other than pursuant to Section **3.05**) to perform any of its material obligations under this Agreement or the Purchase Agreement relating to such Service, and such failure of a provision of this Agreement shall have continued without cure for a period of fifteen (15) days after receipt by the Buyer of a written notice of such failure from the Seller seeking to terminate such service, or under any applicable cure provision contained in the Purchase Agreement. Section 4.01 of the Transition Services Agreement outlines the parties' obligations regarding confidential information. (Ex. D, § 4.01).

21.     Control of the domain name AnimalHospitals.com was transferred to Plaintiffs on September 23, 2013.

22.     The AnimalHospitals.com website continues to be hosted on a server controlled by McDermott.

HARRIS BEACH
ATTORNEYS AT LAW

23.     McDermott owns the backend listing software required for AnimalHospitals.com to function and therefore, in connection with the APA, the parties also executed a Software License Agreement on September 23, 2013 (collectively with the APA and the Transition Services Agreement, the "Agreements").  A copy of the Software License Agreement is attached hereto as **Exhibit E**.

24.     Paragraph 1 of the Software License Agreement reads as follows:

> 1.      License Grant.  Subject to the terms and conditions set forth in this Agreement, Licensor hereby grants to Licensee a royalty-free, non-exclusive license to use the source code, object code and other intellectual property set forth on Exhibit A, and all related rights thereto.  Either Licensor or Licensee may assign this License to a purchaser of substantially all of the assets of Licensor or Licensee, as applicable, provided the applicable party provides the other party hereto notice of said proposed assignment, and consenting party shall not unreasonable withhold or delay its consent to said proposed assignment provided further that the proposed assignee intends to operate in the same first class manner as the assignor.  The use of the source code, object code and other intellectual property set forth in Exhibit A shall be strictly for the Restricted Business as set forth in the Purchase Agreement.

25.     Rather than provide the source code for the backend software as contemplated by the APA and the Software License Agreement, McDermott only allowed Plaintiffs to access the backend software via log in credentials that McDermott controlled and continues to control.

26.     Upon information and belief, on or about October 8, 2013, McDermott denied Plaintiffs access to the backend software, resulting in losses to Plaintiffs' sales operation.

27.     Upon information and belief, on or about October 23, 2013, McDermott disabled Plaintiffs' access to the backend software, again resulting in losses to Plaintiffs' sales operation.

28.     At McDermott's request, Plaintiffs accelerated the payment process and paid the $100,000.00 due under Note in a matter of weeks as opposed to the twelve months provided in the Note.  Meehl paid the Note early through three separate wire transfers to McDermott's bank

account. A redacted copy of Meehl's bank statement reflecting the wire transfers is attached hereto as **Exhibit F**. On October 11, 2013, Meehl transferred $50,000.00 to McDermott. Meehl wired $25,000.00 on November 5, 2013 and a final payment of $25,000.00 on November 6, 2013, satisfying payment of the Note in full and well ahead of schedule.

29. After receiving the final payment from Plaintiffs, McDermott repudiated the Agreements by his October 30, 2013 email to Meehl by which he falsely claims that the parties agreed to "terminate the current arrangement" and expresses his desire to "end this business relationship." McDermott also threatened to disable Plaintiffs' access to the backend software. A copy of this email is attached hereto as **Exhibit G**.

30. On November 8, 2013, McDermott emailed a letter to Plaintiffs demanding additional compensation in addition to fully paid purchase price and alleging that (i) Plaintiffs were responsible for the software and data transfer relating to the domain names AnimalHospitals.com and Veterinarians.com, (ii) Plaintiffs owe McDermott compensation for hosting and maintaining AnimalHospitals.com since closing, (iii) Plaintiffs breached Section 4.01 the Transition Services Agreement by supposedly failing to deliver non-disclosure agreements between VetKlicks and its independent contractors, (iv) breaches by Plaintiffs have resulted in additional attorneys' fees, and (v) based on his search with the Massachusetts' Secretary of State's office, VetKlicks is not registered to do business in Massachusetts. A copy of the letter is attached hereto as **Exhibit H**.

31. Upon information and belief, on or about November 8, 2013, McDermott denied Plaintiffs access to the backend software for a third time.

32. On November 9, 2013, McDermott again emailed a letter to Plaintiffs terminating the Agreements pursuant to Section 3.02 of the Transition Services Agreement due to Plaintiffs'

sending of 10,000 emails to potential customers. A copy of the letter is attached hereto as **Exhibit I**.

33. Upon information and belief, Plaintiffs sent approximately 8,000 to 9,000 emails to potential customers on a mail server that is wholly separate and apart from McDermott's server that hosts the website AnimalHospitals.com.

34. Upon information and belief, Plaintiffs' email correspondence did not cause any additional traffic on McDermott's server because the emails were sent using a different server and the AnimalHospitals.com website did not experience an increase in traffic.

35. The APA also contains a further assurances clause. The complete text of Section 5.09 of the APA reads as follows:

> **Section 5.09 Further Assurances.** Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions and give effect to the transactions contemplated by this Agreement and the documents to be delivered thereunder.

36. Pursuant to the indemnification clause of the APA, Plaintiffs are entitled to indemnification by McDermott pursuant to Section 7.02, which states:

> **Section 7.02 Indemnification By Seller.** Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:
> (a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement or any document to be delivered hereunder; or
> (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement or any document to be delivered hereunder.

37. According to the terms of the APA, Plaintiffs are entitled to specific performance of the terms of the APA:

> **Section 9.13. Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

38. McDermott's failure to deliver the assets paid for by Plaintiffs and his threats and affirmative action to deny Plaintiffs access to the backend software constitute material breaches of the Agreements. Plaintiffs provided the deliverables pursuant to Section 2.03 of the APA and paid McDermott in full.

39. Upon information and belief, McDermott intentionally inflated the value of the customer contracts in effect at the time the deal was consummated and Plaintiffs subsequently discovered the value of an average customer contract was significantly lower than represented by McDermott.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

40. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

41. Section 1.01 and Exhibit 1 to the APA state McDermott shall deliver to Plaintiffs, *inter alia*, all associated content and source code relating to AnimalHospitals.com.

42. McDermott breached the APA by failing to deliver all associated content and source code, including the backend software, to Plaintiffs.

43. Plaintiffs have fully performed under the APA.

44. McDermott's conduct has caused Plaintiffs injuries in the form of lost profits and lost goodwill.

## SECOND CAUSE OF ACTION
(<u>Negligent Misrepresentation</u>)

45. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

46. McDermott, knowing Plaintiffs would rely on his misrepresentations, provided false information to Plaintiffs regarding the value of existing customer contracts during the due diligence process of the transaction.

47. Plaintiffs justifiably and reasonably relied upon McDermott's misrepresentations when valuing the transaction and as a result Plaintiffs have suffered a pecuniary loss.

48. McDermott failed to exercise reasonable care or competence in obtaining or communicating accurate information to Plaintiffs.

## THIRD CAUSE OF ACTION
(<u>Fraudulent Misrepresentation</u>)

49. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

50. McDermott knowingly misrepresented the value of the existing customer contracts during the due diligence phase of the transaction.

51. McDermott intended to induce Plaintiffs to rely upon his misrepresentations and subsequently act upon them.

52. As a result of McDermott's misrepresentations, Plaintiffs suffered a pecuniary loss.

## FOURTH CAUSE OF ACTION
(<u>Declaratory Judgment as to the APA</u>)

53. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

54. Actual controversies exist between Plaintiffs and McDermott as to the parties' rights and obligations under the APA.

55. Plaintiffs have satisfied various generic obligations relating to the transaction pursuant to Section 2.03 of the APA, all of which Plaintiffs complied with, but the primary element is payment of monies.

56. Plaintiffs have fulfilled their obligations pursuant to the APA by paying the $250,000.00 purchase price in full and ahead of schedule.

57. Plaintiffs purchased the Purchased Assets as defined in Exhibit 1 to the APA.

58. As required pursuant to Section 1.01 and Exhibit 1 to the APA, McDermott did not deliver all associated content, design, code (source and object), brands, trademarks and other intellectual and tangible property relating to the domain name AnimalHospitals.com.

59. Under the facts of this transaction, McDermott may not terminate the APA after the closing date.

60. As required pursuant to Section 5.09 of the APA, McDermott must have conveyed the backend software following the closing of the transaction.

61. Pursuant to Section 7.02(a) of the APA, McDermott must defend, indemnify and hold harmless Plaintiffs, their affiliates, and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to any inaccuracy in or breach of any of the representations or warranties of McDermott contained in the APA or any document delivered thereunder.

62. Pursuant to Section 7.02(b) of the APA, McDermott must defend, indemnify and hold harmless Plaintiffs, their affiliates, and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to any breach

or non-fulfillment of any covenant, agreement or obligations to be performed by McDermott pursuant to the APA or any document delivered thereunder.

63. Pursuant to Section 9.13 of the APA, Plaintiffs are entitled to specific performance of the terms of the APA, in addition to any other remedy to which they are entitled at law or in equity.

### FIFTH CAUSE OF ACTION
### (Declaratory Judgment as to the Software License Agreement)

64. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

65. An actual controversy exists between Plaintiffs and McDermott as to the parties' rights and obligations under the Software License Agreement.

66. Plaintiffs are entitled to a royalty-free, non-exclusive license to use the source code, object code and other intellectual property and all related rights thereto relating to the current version as of September 23, 2013 of listing software previously used or useful in connection with the operation of "AnimalHospitals.com", including source code, object code and other intellectual property related thereto.

### SIXTH CAUSE OF ACTION
### (Declaratory Judgment as to the Note)

67. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

68. An actual controversy exists between Plaintiffs and McDermott as to the parties' rights and obligations under the Note.

69. Plaintiffs are entitled to a determination that they have paid in full under the Note and all obligations of Plaintiffs under said Note are discharged.

### SEVENTH CAUSE OF ACTION
### (Declaratory Judgment as to the Transition Services Agreement)

70. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

71. An actual controversy exists between Plaintiffs and McDermott as to the parties' rights and obligations under the Transition Services Agreement.

72. Plaintiffs are entitled to a determination that McDermott is not entitled to terminate the Transition Services Agreement because Plaintiffs have not failed to perform any of their material obligations under the Transition Services Agreement or the APA.

73. Plaintiffs are entitled to a determination that they have not violated the provisions of Section 4.01 of the Transition Services Agreement relating to confidential information.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment as to the Related Agreements)

74. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

75. Notwithstanding Plaintiffs position McDermott is bound by a valid and enforceable APA and the Agreements, Plaintiffs are entitled to adjudication as the appropriate scope and rights of the Parties pursuant to the APA and the Agreements, taking into account all the applicable facts, circumstances and public policy.

**WHEREFORE**, Plaintiffs demand judgment as follows:

1. On the First, Second and Third Causes of Action, awarding Plaintiffs compensatory and punitive damages in an amount to be proven at trial;

2. On the Fourth Cause of Action, declarations that the APA and Agreements are valid and enforceable in all regards and Plaintiffs are entitled to the relief and benefits contained therein;

3. On the Fifth Cause of Action, declarations that Plaintiffs are entitled to a royalty-free, non-exclusive license to use the source code, object code and other intellectual property and all related rights thereto relating to the September 23, 2013 version of listing software previously

used or useful in connection with the operation of "AnimalHospitals.com", including source code, object code and other intellectual property related thereto.

4. On the Sixth Cause of aAtion, a declaration that Plaintiffs' obligations thereunder have been fulfilled in all regards and the Note is deemed Paid in Full;

5. On the Seventh Cause of Action, declarations that the Transition Services Agreement is valid and enforceable in all regards and that Plaintiffs are entitled to the relief and benefits contained therein;

6. On the Eighth Cause of Action, a declaration that Plaintiffs are entitled to adjudication as the appropriate scope and rights of the Parties pursuant to the APA and the Agreements, taking into account all the applicable facts, circumstances and public policy;

7. The issuance of a temporary restraining order against McDermott pursuant to the terms of the APA and related Agreements;

8. Preliminary and/or Permanent injunctive relief barring McDermott from breaching the APA and the related Agreements;

9. Awarding Plaintiffs their attorneys' fees, costs and disbursements;

10. Awarding such other and further relief as the Court deems just and proper.

Dated: November 12, 2013

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues so triable.

/s/Karen E. Friedman
FRANK C. MUGGIA, ESQ.
BBO # 555199
TRISTAN D. HUJER, ESQ.
BBO # 675882
HARRIS BEACH PLLC
726 Exchange Street, Suite 1000
Buffalo, New York 14210
(716) 200-5050

KAREN E. FRIEDMAN  
BBO #548943  
THOMAS E. LENT  
BBO#644970  
Lurie, Lent & Friedman, LLP  
One McKinley Square  
Boston, Massachusetts  02109  
(617) 367-1970  

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to all registered participants.

/s/ Karen E. Friedman

267715 2144975v4